We'll hear argument next in Case 21-1326, United States, ex rel. Schutte v. SuperValu Inc. and the consolidated case. Mr. Singh. Mr. Chief Justice, and may it please the Court, the False Claims Act establishes three independent ways to prove scienter for a defendant who presented legally false claims. First, if the defendant correctly interpreted the law and then chose to break it, that's actual knowledge. Second, if the defendant didn't bother to honestly assess what the law required before improperly presenting claims, or presented claims as if they were definitely true despite knowing that they might well be false, that's either deliberate ignorance or recklessness. And third, a defendant may have adopted an interpretation of the requirement that was so unreasonable as to be objectively reckless. On the other hand, if the defendant attempted to discern and follow the correct interpretation of the law, and was transparent with the government about how it resolved ambiguities, there is no scienter. This rule is not easy for plaintiffs, but it is a fair rule that follows the plain meaning of the text, tracks more than a century of the common law of fraud, and achieves the fundamental purpose of scienter, which is to accurately separate culpable mindsets from innocent ones. Respondent's rule, by contrast, holds that contemporaneous scienter can be negated retroactively if the defendant's conduct falls within a wrong but reasonable interpretation of the law. It treats the defendant's subjective beliefs about the lawfulness of its conduct as irrelevant. This would permit some of the worst offenders to escape liability. Indeed, respondents would allow a defendant who presented false claims to admit they wanted to break the law, and yet simultaneously deny that he acted with scienter. That outcome alone shows how extreme their rule is and ought to discredit it. But the problems don't stop there. Across the board, respondents would replace existing incentives for companies to determine and then follow the law with an incentive to plunder every ambiguity for all it's worth. That flies in the face of the statute's text, the common law, and common sense. I welcome the court's questions. Mr. Singh, if there was no guidance as to what usual and customary meant, do you think that an employee, I'm sorry, the respondent here could also be accused of having made false statements? If there is no guidance whatsoever as to what it meant? Yes, Your Honor. I do think that the words themselves have a meaning, usual and customary. So what would you say it is? So I think at a very minimum, if you had to find the sort of irreducible core of it, it's the price you're normally charging to cash customers. That's how it's always been understood since it was enacted, and to a majority of the cash customers. And so if you're charging a price only to a small fraction of cash customers, I think calling it your usual and customary price has always been understood to be a false statement. What if you could show that in Nebraska, which is part of this, it was read one way, but in Iowa it was read another way and there was still no guidance, or disparate ways in different places? Sure. Would you still say that you could find that these statements were false or representations were false? Yes, Your Honor. I think that falsity is generally understood in an objective sense. That is, a statement either is true or is false. Now, it may be the case that usual and customary is interpreted different ways in different states by their Medicaid programs, and so the same practice may be okay in one state and not okay in another. That's a possibility. But what I would say is, let's just take a slightly different example. Let's say that there are different courts that interpret a statute a couple different ways. One is right and one is wrong. There's a true one and a false one. The next question, which is really what's before the court, is about can it be knowingly false? And there we think the answer turns on subjective beliefs. But in response to the frontline question, can it be false, I don't actually think that there's a dispute about that question. That is, there is a right answer, and if you don't get it right, that's false. Well, I'm just, normally you have a baseline from which you deviate, and I'm trying to establish whether or not there is a baseline from which you can objectively deviate before you, or whether that's necessary before you can say it's false. So if everything were totally indeterminate, if there was no statute, no regulation, No, I'm looking at these words, usual and customary. So in this case, the question of whether the respondent's claims were false is really not before the court. In the Schutte case, the district court granted summary judgment to us on that question, and the respondents didn't contest that on appeal. In the Safeway case, the court didn't reach it because it got to see enter first. But I think as the case comes to this court, as you think about how to understand the issues here, the way I would do it is I would start from the premise that they presented false claims. They took money they weren't supposed to take. And now the question is, did they do so with the sort of mental state that would allow the imposition of the False Claims Act's remedies? And I think that that's been the crux of the debate between the parties. Well, that's the only reason I'm asking that is shouldn't you said they took money they shouldn't take. So in order to determine that, we have to know what they should have taken. And they have to know what they should have taken. Yes. So the definition adopted by the lower courts was it's the so the definition in the regulations is the cash price charged to the general public. And so so also, I guess I should back up. You know, I took your question to be premised on a hypothetical world in which there was no guidance. In this world, there was guidance there. Isn't the argument, though, about how much guidance you need in order for there to be a deviation to be false? No, Your Honor. I don't think that is the argument at all. In this case, I take it as a given that the claims were false. They have not argued otherwise, either on appeal below or here. And so the question is just what did they know? Now, that does get to the second part of the question that you just elucidated. Well, what did they have to know? How could they have known? And what we would say is that under the common law of fraud, which is incorporated into the False Claims Act, it's enough if you correctly believe your claims are false. That is, based on the guidance that was available, if respondents formed a view that said, OK, you know, when we start charging these prices to a majority of the cash customers, we've got to report them. And we have evidence in the record that that's exactly what they thought. Then we've got to also pass those discounts on to the government. But you know what? Let's not do that. Let's instead charge the government more because we would take a huge hit to our margins if we did the other thing. We think that that would count as actual knowledge under the False Claims Act or at a minimum when you know there's a real substantial risk that that's how it's going to be interpreted, which, again, they would have known because pharmacy benefit managers, Medicaid states and others were reaching out to them and saying, hey, you have to report all of your discounts. How are you reacting to Wal-Mart's program? Wal-Mart had started charging four dollars for all of the generics, and it passed that discount on to the government. And so naturally, these intermediaries for the government, Medicaid agencies wanted to know. What if there's a situation where you and C charges? There are three different ways you can interpret that, let's say, A, B, and C. And A is clearly in the safe zone. B is a little more aggressive. And C is, you know, pushing the envelope, but, you know, we still think it's a reasonable interpretation. And we're going to go with C because our job is to make money. And so we're going to go with C because we think that's objectively reasonable interpretation. It turns out later on that's ruled wrong. You're using the word false. So that's false. Why liability in a situation like that or is there a liability in a situation like that? There well might be. I just want to put liability. Even though it's objectively reasonable that A, B, and C are all objectively reasonable? So let me work through why I think the answer is yes. In the hypothetical, I'm assuming that the company has said we think A is the best interpretation, but B and C are also possible. And we're going to go with C. Yeah, which happens every day in the executive branch, too. We'll get to that. Sure. And so the company has chosen in this instance to abide by an interpretation of the law that it thinks is wrong or probably wrong, right? We think that that is culpable. To be wrong or probably wrong means that it's outside the scope of a reasonable interpretation of the statute. So there, I think, is where perhaps the disagreement is. As you posited before, it's false. And so maybe I'll use that word. They've chosen to abide by an interpretation. That's a loaded term here, but go ahead with it. Sure. But I think that that's how this statute is meant to work. That is to say, I agree with you, Your Honor, very strongly that left to their own devices, companies believe our job is to make money. And they will do the thing that will make the most money. And it would be naive to expect them to follow a different interpretation if there weren't some incentive to do so. I think Congress understood that as well when it enacted the False Claims Act. The False Claims Act is designed not to allow a company to identify every possible reasonable interpretation or every interpretation it thinks it could get a judge somewhere to pick and then choose the one that's most profitable. The False Claims Act is designed to create that economic incentive to actually follow the best interpretation. I guess I'm a little bit surprised by your answer to Justice Kavanaugh because I thought that this case comes to us on the understanding that they thought that this interpretation was wrong. Yes, Your Honor. Not like possibly permissible but possibly not the best one. That they thought that this interpretation was wrong. They knew it was wrong. Yes, Your Honor. That is what we've argued in this case. I don't think my ability is limited to that. I thought that was a given. And the question was, what's the effect of that? Yes, Your Honor. That's a given. And then the question is, well, does that count under the statute if you can find somebody else later to say, well, they knew it was wrong but in fact it was objectively reasonable even though it was wrong. So that's what the case comes to us. That's the question, right? Yes, Your Honor. That is the question. And so I guess maybe I'll split the world again into two sets of facts. One is where contemporaneously the sentence is we're not doing the right thing but it's possible, you know, you hire the best lawyers later after you get sued and they come up with a rationalization and say, oh, but maybe it could have been reasonable. You know, it's arguably reasonable. I thought that that's the question before us. Yeah, and I'm asking about a hypothetical. That's what I was trying to do. Yeah. But, Your Honor, I would say even in the situation in which the timing is different from this case. Right, where at the time, so I'm asking, this is a hypothetical, okay? At the time, you have three different interpretations possible, and one's clearly safe, one's a little more aggressive, and the third's really aggressive but you still think it's reasonable. And you go with that third one and it's later, they don't agree later on, so it's, quote, false. And you said you're still liable even in that circumstance. And I find that, now Justice Kagan correctly says that's not this case. I just want the answer to the hypothetical so I can figure out how to think about all this. Yes, Your Honor. So I think there are circumstances in which that could be culpable. And so here, you know, the first one is, as I said, if the view inside the company is this is probably wrong, we're going to do it anyway. That is. Well, I doubt, I mean, probably wrong. So you're loading the hypothetical, I think, for how attorneys often. So this is aggressive, this is pushing the envelope, but we think we can defend it. It could be a stretch. It's not out of the bounds. Yeah. So one other factor that would be relevant, just to populate the hypothetical with a few more facts that might be relevant, you know, the statute also includes, for example, deliver ignorance. And that places an onus on companies when it's available to seek clarification. And so in many of these programs, there are avenues to seek clarification to say, hey, we have these three interpretations. We think this one is good. Tell us. Counsel, I would have thought the answer to the question, if you think there's a material risk but you think it's reasonable, that that's a recklessness question and that, therefore, the objective inquiry that your friend on the other side is arguing for might be appropriate in those circumstances, but that your case just simply isn't that case. Yes, that's true. But I guess I would say I do agree that in the objective sense of recklessness, a reasonable interpretation can't be. So I'll go with that. That said, in the common law of fraud, recklessness is used also in a slightly different way, which is you are subjectively aware of a substantial risk and you choose to ignore it. And so I think that does cover this potential hypothetical as well, which is to say when you have the three interpretations, you know that one might be a little out there. You may be reckless to simply pursue it, especially if. And I want to point this out. As I said in the introduction, it's important to ask whether companies are being transparent with the government in what they do. So if you were to say, just so I understand where we're at, we're not asked to address those circumstances. We're asked to posit that there is indeed a falsity. And we're asked whether, in addition to recklessness, one might proceed under the statute, according to its plain terms, to show actual knowledge or intent to deceive. Yes, Your Honor, that's correct. All we're asked about is a mental state here. Yes, absolutely right. I've never heard an attorney fighting people trying to help you. And I'm not trying to. It happens all the time here. It certainly happens right now. The bottom line question, I think, that we're asking is, however we define reckless, we're not being asked to define reckless today. We're being asked whether the intent of someone to make a false statement is actionable, even if later they come up with an objectively reasonable argument, correct? Yes, Your Honor, that's correct. So the only issue then may be different in terms of recklessness if someone is proceeding on an understanding they had at the time and it turns out to be wrong. That's where recklessness would come in. Yes, Your Honor. And how we define that we can leave for later, right? Yes, so objective recklessness is not really before the court. So we can leave the hypothetical of the person who at the time thought about these different options as opposed to the person who only later came up with the legal interpretation. So I think that you... It's your case, as Justice Kagan pointed out. It's only the latter. I suspect respondents are going to disagree about that characterization of the case and say that they have factual... I agree with Justice Kagan. That's how the case came to us. Yes. And we should decide the case as it came to us and leave for another day, I think, the question of if at the time you considered these various options. Sure. So in that mode of deciding the case, the question before you is the straightforward one of was the Seventh Circuit correct to say subjective understanding and beliefs are irrelevant and we think always irrelevant if the interpretation can be shown reasonable after the fact. We think that's the easy case. No, they're not because actual knowledge is in the statute. Well, that's this case. Yes. Yeah, and so you could decide... Why are you arguing all these hard cases? I asked them. I know, but your case is the easy case. You need to tell us why it's different from the hard cases. Well, sure. I want you to win the hard case here too, but you don't need to. Well, that's correct, Your Honor. And so you're right that I don't need to win the hard case. I was trying to address the hypothetical on its own terms. But, of course, we believe this case is quite different. At the time, the respondents had ample evidence in terms of guidance from the government, guidance from their own attorneys, industry consensus, that if you were offering 80% of your sales for a certain drug at a particular price, 80% of the cash sales at a particular price, that also had to be the usual income. Well, that sounds like you're arguing that it wasn't a reasonable interpretation. I find it easier to apply these scienter requirements to facts than to law. So let me give you this hypothetical. The law could mean X or it could mean Y. And an entity that ends up being the defendant in a False Claims Act case says, we think there's a 49% chance the courts will say it's X, which is good for us, and a 51% chance that they will say that it's Y, which is bad for us. And, therefore, we think it really means Y, the unfavorable interpretation. But there's a 49% chance that the court will adopt the more favorable interpretation. Would there be liability there? Because they turn out to be accurate. The court says, you know, this is a tough question. We think it's 51% for Y, 49% for X, therefore we're going with Y. Yes, again, this is one of these hypothetical hard cases that isn't this case, but, again, I'll try to tilt it and see how it goes. Well, we do take these cases to decide legal questions and not just to decide the particular case. Yes, and so, again, I believe that if the company affirmatively believes we are probably wrong in our interpretation and yet presents a claim with no qualifications, no transparency about the ambiguity, but does so in a way that the government couldn't tell from the face of the claim that they're following, interpretation X and not Y, then, yeah, that's either actual knowledge or recklessness, we think. And it could be deliberate ignorance if there are avenues for clarification that they did not seek. We think that's certainly a possible frame for liability. And let me just offer you, and I know I'm over my time, so I can also come back to it briefly. Sure. I actually think it's not harder to do this for law than for facts. You could posit a situation in which the facts are really, really hard to determine. Let's say it was based on whether a majority of your sales happened. And there was a computer virus. You lost a lot of your data. But an employee says internally, you know, I'm pretty sure that more than half of our sales were at this price. I can't be 100 percent sure. I'm pretty sure. And then you submit the claim as if that weren't true. Again, I think that the CINTRA standard works the same way for facts and law. Thank you. Counsel, when you allege fraudulent or filing of false claims, is that something you have to allege with particularity? Yes, Your Honor. Okay. Justice Thomas? Justice Alito? Does this difference matter mostly for purposes of summary judgment? How many cases are going to be disposed of at summary judgment? Does it matter so much if the case gets beyond summary judgment? So I think it certainly could. In this case, if you rule in our favor, this case will go forward to a trial. And to be clear, I don't think we can move for summary judgment and win right now. I think the respondents will put up a fight at trial. And could they win? Sure. And so, yeah, I do think the rule matters beyond because I do think, and this goes to some degree to the question of why we get into the harder hypotheticals, is because in certain cases there's going to be questions that need to be resolved. So, yeah, I do think it matters beyond summary judgment. Well, there could be a case where an interpretation of the law is really objectively reasonable, very, very reasonable. But there's some evidence, you know, some e-mail or something to suggest that the company thought it was not right. So in that case, you know, that may have to go past summary judgment, right? It may be. You know, without understanding the factual record in more detail, I couldn't say. But, you know, generally speaking, the existence of one e-mail somewhere in the company is not necessarily going to be enough to defeat summary judgment. I would refer the court back to this court's decision in Omnicare. It gave an example of a CEO who says, we believe our conduct is lawful. And the premise was, well, you know, that would be misleading if you hadn't consulted a lawyer, if you honestly didn't think your conduct was lawful. On the other hand, if, you know, seven lawyers told you it was lawful and one junior lawyer said, oh, it's not lawful, that wouldn't be enough to make it misleading. So it's going to be fact intensive. But, yes, there are situations where I think at the margins this could matter. The big question is, do we want to adopt a legal rule like the Seventh Circuit, which would allow all of the evidence inside a company to say, we think we're doing the wrong thing. But then a court to say, well, it doesn't matter, because there was an objectively reasonable sanctuary that you weren't thinking about at the time, that you weren't relying on, but that somehow saves you. And quite similar to what this court did in Halo Electronics, we think that's an unreasonable application of NEC inter-rule. Thank you. Justice Sotomayor? Justice Kagan? Justice Gorsuch? Justice Kavanaugh? Two things. One, in response to Justice Alito, he asked a hypothetical, you know, we think we're going to lose 51-49. And you changed that into, we are probably wrong. Those are two different things. Oh, sure. So, yeah, we think we have the best interpretation of the law. We think a court should decide it this way. We think that's good faith, and that's good. But if you think we think courts applying honestly all of the tools of construction will reject this interpretation, you think it's wrong. We equate those two. Have you ever won a case in court where you thought you had the worst argument? Not yet, Your Honor. I mean, I'm waiting for the day. Justice Barrett? Justice Jackson? Can I just give you a chance to respond to your friend on the other side's reliance on the Safeco footnote number 20? Yeah. I mean, they get that standard, they say, from that case. So why are they wrong about that? So many reasons. To begin, we lay out in the briefs, I think, as comprehensively as we can why Safeco is just decided in an entirely different context. A moment ago, I referenced the Halo Electronics case, and Safeco's and its footnote 20 were the basis for the Seagate test that was up before the court in Halo. And this court said, no, we're not going to extend the Safeco footnote to this distinct context of patent damages. And the precise reasoning was you could have people who act in really subjective bad faith for whom enhanced damages were intended to be applied, and they would get away with it. The same is really true in the fraud context. People who are intentionally trying to cheat the government, there's no realistic argument for why the Safeco footnote... Is that because the statute has actual knowledge in it? Yeah. So there is, first, the textual distinction of having a three-part definition of knowledge and it being a fraud statute. There's the fact that it draws from the common law of fraud, which is Section 526 of the Restatement Reports, not Section 500, which was at issue in Safeco. There's the issue of the background principles of law that require those who do business with the government to determine the propriety of their claims before presenting them, a principle that's not necessarily the case throughout the entire regulated economy where the Fair Credit Reporting Act applies. And then there's also just the way that we read that footnote, which is that we don't read it to apply in a situation where at the moment the company made its decision, it had no inkling of the defense that it now seeks refuge in. We read it to mean that the company contemporaneously followed an interpretation that was reasonable at the time, not that it came up with that interpretation later. Thank you. Thank you, Counsel. Mr. Stewart? Mr. Chief Justice, and may it please the Court, I'd like to begin by addressing the line of questions that Justice Kavanaugh posed earlier about the internal company meetings where three possible interpretations of the law were discussed. And there are really two important differences between the hypothetical and this one. The first one is the hypothetical seemed to involve a situation in which the company was not attempting to have contact with the government but was deciding what course of action it would take and was contemplating the possible litigation risks down the road if it was sued. And what's extremely important about the False Claims Act is we're not just talking about conduct, we're talking about representations. In the course of submitting claims, the claimant is making representations either to the federal government or in the Medicaid and Medicare context to state and private intermediaries, and they are describing their own practices. And in our view, the one bedrock requirement is they should not say things they do not believe to be true. And even if they think there is a reasonable argument down the road that it is true, if their best judgment is the statement we are making is not true, they shouldn't make it. The second thing I would say is the representations we're talking about here are not pure propositions of law. In giving figures as to their usual and customary prices, they were in essence using a mixed term of fact and law. They needed some legal conception of what usual and customary meant in order to do the calculations. But the whole reason that the state agencies and the pharmacy benefit manufacturers were asking for this information was it was factual information about the prices that they customarily charged to their cash customers. And that was information that the agencies and the PBMs didn't have on their own. That was information they needed to give to the company. Mr. Stewart, you keep saying whether the statements they made and representations, and I gather there will be litigation at some point about what the representations were. But when you say something is true or false, I assume it has a legal element to that determination. It's not simply this is X and it turns out I know it's Y. It was this falls within a particular statutory provision, applying this, and you'd say they knowingly represented that mixed question to have this answer and that was wrong. That's correct. Now if they had laid it out, if they had shown their work as it were, and they had said our retail price is $20, 80% of our cash customers pay $4 to this drug, but our understanding of the term usual and customary is that it refers to the retail price and therefore we're claiming $20. If they had done all of that, there wouldn't have been anything deceitful and there wouldn't have been any real danger that the state agencies and the pharmacy benefit manufacturers would be deceived. They'd have the right facts and they could decide for themselves what the correct view of the law is. I appreciate that, but on the other hand, in terms of showing their work, I mean they're dealing with the government in a way in which the government says is going to affect their profits and everything, and I don't know if they have to show the work if it is $51.49. I would say they should give their better view of what the usual and customary price is, and if their understanding is probably the better view is that the usual and customary price in this context is the discounted price, and if they understand that the state agencies and the PBMs believe that to be the price, then when they say $20 is our usual and customary price, they understand this will be misconstrued. You're making it too easy for yourself. This is probably true. Let's do it in the $51.49. Do they have to say to you that we think it's $51.49, or can they decide we're going to go with the $49? Because there aren't. It's not $51.49. It's here are the arguments for one, here are the arguments for other, and then you weigh the arguments. And if they come up and say, well, gee, I think if we go to the Supreme Court it's going to be five to four, is the four unreasonable for them to rely on? If they have to say to you that most cash customers pay that, then the intermediary or the pharmacy benefit manufacturer of the state agency will have been misled as to an important point of fact. I mean, Mr. Singh referred to Omnicare and the hypothetical statement, we believe that our company's practices are lawful. And the court said, in some circumstances, that would imply that you've done some investigation. But the most basic thing you are conveying is that is actually our subjectively held belief. And the court in Omnicare said, if you said that and you didn't actually believe it was true, you would be lying and you would presumably know you were lying. Mr. Stewart, your law fact distinction is helpful for me. Obviously, if you say it's $20 and in fact you're charging everyone $10, okay, false, I get that. But if it's based on a legal understanding, it's a little hard for me to say your legal view is false. Your view of the law is false. Normally, we'd say your view of the law is incorrect or your view of the law is so incorrect as to be completely unreasonable. We don't usually say your view of the law is false. So help me with that. I think that's right. But what we are saying was false was not, for purposes of liability, is not the view of the law. The thing that was false was the statement, our usual and customary prices were $20, when in fact, under a proper calculation, they were $4. And I think, leaving aside Sienta for a second, just for the purposes of deciding, were false claims submitted? I think it's common ground on both sides that if you misstate your usual and customary prices and state that's false, even if the source of the error is a misunderstanding or a misconception of the relevant law rather than a misunderstanding of the facts. What was your answer to the hypothetical if you, at the time, do the three interpretations and at the time conclude but you don't disclose it at the time? You go with the most aggressive one at the time but you don't disclose it and you just list 20. We would say that would be with actual knowledge that your claim was false. Doesn't the government all the time, this was my illusion earlier, debate what position to take in national security situations or EPA regulation or what have you? Well, we have a couple different interpretations here. This might not be the best one but we're going to go with the most aggressive one. That never happens in the federal government? Oh, I think it happens and I think it happens in private practice and I'm really focusing on the fact that we're not just talking about what you do and whether you can be held liable after the fact for penalized for doing it in bad faith. We're talking about things you say. And the court, for instance, last year dealt with this problem in Unicolors where it was dealing with a copyright act. Well, the federal government would say it to a court. The federal government might adopt a legal interpretation for various views that some people in the federal government don't think is the best but they still think it's reasonable. And again, we would say… And represent that to a court. Is that fraud on the court? I guess I'm more confused after your presentation than I was before. I would have thought that in the hypotheticals Justice Kavanaugh is giving you where there's some reasonable good faith basis for it that you are relying on in making a presentation, that at most that would be reckless. And maybe not even reckless if objectively there was enough evidence out there in the law to support your claim. And that all this issue before us isn't that. It's an allegation yet to be proven that the company knew that its representations were not its ordinary and customary price under its understanding of the law. It knew that there was no good faith basis and that that is potentially actionable here. I hope that's all that was before us. Well, I think respondents will say that there's much more than that before you. Oh, I'm sure they will. But I guess to respond more directly to your question, there are lots of propositions that I understand reasonable people could believe and that might even be right, but I don't believe them. Correct. And I say, yes, I do. I'm lying. And I know that I'm lying because I understand that my subjective belief is not what I have just represented it to be. And that's all we have to decide in this case is whether that is actionable. Well, the irony is even in the kind of let's make it 40, 60 percent, the company thinks 60 percent likelihood that this is false, 40 percent that this is true. If they were asked to say, do you believe what do you believe your usual and customary price is? And they said, we think it's the twenty dollars, the higher figure when they thought, in fact, that the better argument was it was the four dollar figure. Under Omnicare, they would have falsely stated their belief and they would have stated it with C enter. And yet they're saying we can get off because they believe it to be four dollars. Correct. And they said it was twenty dollars. They believed it to be four dollars. Yes, they did. So that's the question before us. I believe it to be four dollars, but I'm saying it's twenty dollars. Yes, but the question is. So I think Justice Kavanaugh was suggesting that there's a harder case out there, which is I'm not sure whether it's four dollars or twenty dollars. I can kind of make arguments both ways and I'm going to press the argument that is most to my advantage. But I guess I'm still having the same trouble that I was having with Mr. Singh. That seems to be not the case before us. The case before us is I believe it was four dollars. But I'm saying it was twenty dollars. I mean, just just to clarify the way we read the Seventh Circuit's opinion. And I I don't want to be accused of turning down help, but I I do want to make this clarification. I don't understand the Seventh Circuit to have said subjectively. They absolutely, absolutely thought that it was four dollars, but they said it was twenty dollars. And then they came up with a post hoc rationale down the road. What I understood the Seventh Circuit to say is it's been alleged that they knew at the time that it was four dollars. Of course, it's an allegation. But the allegation is that they believe something different from what they told the government. And again, I would say in order to believe that four dollars is the right price, you don't have to think there is no conceivable argument for the other prices. In the other in the circumstance. Thank you, Mr. Stewart. I just have one very brief question. You're saying that this was false when they say twenty dollars as opposed to four dollars. And you say that was false. There is a legal analysis baked into those numbers. Right. It's not simply there is twenty dollars here and there's four. It is. This is how I read it. And that comes out to 20. And you're saying they thought that was false. Now, do you mean you're simply saying they didn't know the legal analysis they put in was the 40 percent and not the 60 percent? Yes. OK. Yes. Thank you. Justice Thomas. Justice Alito. Well, I like to resist the temptation to make easy cases hard. But it does seem to me that the legal issue here is is harder than it has been portrayed. Unless you think that people have the same certainty about the meaning of the law that they have about facts. So I know as a fact that it is Tuesday. But I have ideas about what the law means and what it should mean and what courts will interpret it to mean. But you can't hold that with most of those. Many of those. I'll amend that. Some of those with the same degree of certainty that you have generally about facts. That's what makes this a hard case. I mean, I agree it's a hard case, but and it may be more difficult for that reason to prove that the person subjectively believed that he was giving the wrong numbers. But I think the bedrock criterion in these circumstances is when you're making representations to the government and asking for money, you should say what you believe to be true. And if we imagine a lawyer, for instance, advising a client who asks, do you think what I propose to do is legal? The lawyer may recognize there are good arguments both ways. But if the lawyer actually thinks the better argument is this is illegal and he says, I think the better argument is that it's legal. That's just knowingly making a false statement. Justice Sotomayor, Justice Kagan, Justice Kavanaugh. I mean, I think that last statement was pretty extreme, but it's not this case. To clarify, I'm not talking about the lawyer's representation in court because we do understand that when the lawyer argues in court, he or she is not making an implicit representation. I would adopt all of these views if I were a judge. But when the lawyer is advising a client, that is a circumstance where even in cases of indeterminacy, we would expect the lawyer to provide his or her best judgment. And if the lawyer failed to do that, it wouldn't be a sufficient answer to say, I understood at the time that this was a possible respectable view of the law. If the client says, well, I realize it's not your best interpretation, but if I go with the other interpretation, can I win in court? And the lawyer says, yeah, I think you have a good chance of winning. That would all be fine. Again, assuming that is actually the lawyer's good faith view. There are some circumstances in which we expect, you know, if for some reason expert testimony on a question of law were admissible, we would want the witness to give his or her best judgment about what the law is. And if the person gave anything other than that, it wouldn't be a sufficient justification that there was a reasonable argument to be made. Justice Barrett? Just a quick question about the limits of your argument. I mean, to decide this case, right, I mean, if we were just to say it's not a 49-51, it's a case where there's no confidence, where there's a belief that it's false and not even a belief at the time that there was a reasonable argument later, you're happy with that? If we decided in your favor on that basis? I mean, if you decide the case on that basis, I think that would lead to a reversal, so it would be the right disposition. To the extent the court implied that this was the only circumstance in which a misstatement about a mixed question of law and fact could be made with surrender. I guess I'm saying not bleeding into reckless disregard and stuff like that, deliberate ignorance. I mean, the hard cases that might come up in the medium, if we classify this at one under the spectrum, you're not happy with that or you are? Not really, because, I mean, because in other contexts, applying this vision of knowledge seems extravagant. We wouldn't be saying anything about other contexts. Okay. Thank you. Justice Jackson? Yeah, so I'm over here struggling as to why this is a hard case. I don't understand it at all. I was with Justice Kagan. I thought the Seventh Circuit said, essentially, that the subjective beliefs of the supermarkets were irrelevant. Yes. All right. And so then the only question, I thought, is whether the allegations that are being made about their subjective beliefs matter. They're not irrelevant. If we're trying to figure out what the scienter is in this case, you, the jury, let's say I'm charging the jury. You, the jury, can take into account evidence concerning their actual beliefs, what they subjectively believed about the $4 or the $20 or whatever. Isn't that the question? Is the Seventh Circuit wrong when it says, essentially, jury, the only thing that matters in terms of establishing knowledge and scienter in this case is an objective view of the price. But all of this evidence with respect to what they actually thought, that can't be used to determine whether or not they had actual knowledge. If all the court does is say that was a misconception on the Seventh Circuit's part, we send it back for the Seventh Circuit to redo the analysis without regard to that misconception, that's certainly a step in the right direction. But it's not the only step that you want to take in this case. I thought that's what we were doing. I thought what we were doing was assessing whether the Seventh Circuit's statement that the subjective knowledge was irrelevant was wrong. Obviously, we would prefer, from the standpoint of somebody who is not just working on this case, but who represents the government that is litigating False Claims Act cases across the board, we would prefer greater clarification about what the rules are in the hypothetical case where the allegation is, yes, at the time you acted, you considered the possibility of this interpretation. You just thought it was wrong and said it anyway. We would prefer to have it clarified that that's actual knowledge as well. But what you propose is certainly, as I say, a step in the right direction. Thank you, Counsel. Mr. Phillips? Thank you, Mr. Chief Justice, and may it please the Court. I think I want to start by trying to make this a hard case. Justice Kagan, I don't think this is just a case about post hoc lawyer rationalization. That was HALO. There's no question. Those were the facts in HALO. In this case, I think you have to go back to 2005 when usual and customary had been in place for many years. Walmart adopts a pricing mechanism where it discounts deeply and across the board for all generics. And the question is, what do the rest of the pharmaceutical business do in that context? And it does it, Justice Thomas, against the backdrop that there is no usual and customary guidance. There is nothing from the federal government that tells you what the right answer is. And there are lots of different states that take lots of different positions. There's lots on the record in this case that says that the interpretation adopted by my clients is absolutely correct. Those discounts didn't count. And the reason why I don't think you can look at this as a post hoc justification for what they did is at the time, my clients who actually matched, directly matched the Walmart scheme and said, okay, $4 flat discount across the board, that's exactly what they charged as the usual and customary number. But when they didn't adopt that approach, when they stuck with the individual matching programs, or when they adopted membership programs that had some discounts and not some discounts in certain circumstances, in their view, their ordinary price to the customer, the person who walks in the door, rings on the bell of the pharmacist and says, I want a prescription for Crestar. What's the price that I have to pay for it? I have my wallet here ready to pay cash. And the number's $10. And that's the number that they would report as the usual, excuse me, and customary. And they did that on the basis that that is a reasonable approach, that is an objectively reasonable decision, and that there is nothing, not even remotely, in the category of definitive guidance, authoritative guidance, from any agency of the federal government, and certainly not from any court. Indeed, all of the courts have decided that issue until Garvey in the Seventh Circuit in 2016 had held that this was perfectly okay. And put it into context. These are prices that were offered and audited, in one instance, 12,000 times over a decade. Not once did anybody complain about whether or not these were usual and customary and an acceptable price. It sounds to me like an excellent jury argument, and maybe even a good summary judgment argument, that my client had no reckless disregard, deliberate difference, or knowledge of the falsity of the information I was supplying the government. But I think the question before us is a narrow one, and that is, did the Seventh Circuit err when it said that the only evidence that could be admitted against your client was objective proof? And I think the statute makes that argument pretty hard, that knowing and deliberate indifference require subjective proof, proof of internal knowledge and actual knowledge, and so that the law makes that an available course to meet the case for a plaintiff. Whether they can do so here, I know not. And you may have a very good argument. But why wouldn't we reverse the Seventh Circuit on the narrow question presented because they failed to account for the fact that the statute has some mens rea attached to it? Well, I think the court's going to at least have to deal with Safeco, and the statement in Safeco that it would defy history and current thinking to treat a defendant who merely adopts one such reasonable interpretation as a knowing and reckless violator. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts. And I submit that subjective evidence is not relevant. And that's all the Seventh Circuit did. Now, obviously, there's a whole discussion and a debate between the majority and the dissent on the issue of, does that mean post hoc rationalization, et cetera. I don't think the court has to decide that issue in this case. I think in this case what the court has to recognize is that we deal in a situation where there's no guidance. We have an inherently ambiguous term. We used what was by all accounts and is undisputed before this court, an absolutely objectively reasonable interpretation. So the number we gave was based on an objectively reasonable interpretation. And therefore, members of the jury, you should not infer knowledge? You should never get to the jury. And that's the whole point of this, because if you adopt the opposite rule, Justice Gorsuch, then you won the same position the United States took in Safeco, right? You guarantee that in every single case you have to waive the privilege for the attorney-client relationship. You're going to have to scrutinize what happened. What was the defense? Who said what? I can easily imagine a case, Mr. Phillips, in which there's all kinds of internal communications, not among lawyers but among business people, saying, we know this isn't our usual and customary price under any reasonable definition, but we're going to do it anyway, okay? And for reasons that turn out later with subsequent guidance, it might be objectively reasonable if mistaken, but they knew. And that would be fraud in a normal circumstance, and I don't know why it wouldn't be here. Because that's not this case. I don't think I have any problem with that case. But the case we're in, because it goes to the frame. I think acknowledging that you have no problem with that suggests the Seventh Circuit erred in suggesting otherwise. No, because what that situation is, if you have, you're at the summary judgment stage. My clients and the business community's interest here is can these cases end at summary judgment, or are we, one, insisting? I understand that, but I think if you concede that knowledge, internal knowledge, can be relevant, that's all we would say in this disposition. We would not take away any of your defenses on knowledge or deliberate indifference based on the facts. I mean, I think it goes to the objective reasonableness of the ultimate determination. Sure. And if everybody thinks it's wrong, it may be that that's not an objectively reasonable assessment. I think Justice Kagan had a question. My question was the same as Justice Gorsuch's question, which is when you said that in the hypothetical, let's call it a hypothetical, where the company says we know this to be wrong, but we're going to state it to the government. We know our price is one thing, but we're going to state another thing to the government. If you say, well, yeah, you have no problem with that, well, the Seventh Circuit did have a problem with that. The Seventh Circuit thought that as long as you could find somebody later that said that what you said was objectively reasonable, it didn't matter that you believed it to be entirely wrong. Except that's – I mean, there's undeniably discussion in the Seventh Circuit's opinion and the debate between the majority and the dissent on what to deal – what to do in connection with post hoc rationalization situations. That is not – that was not the way – that was not the basis for the district court's rulings in this case, which come off of Safeco, which are based on was the action taken reasonable, objectively reasonable under the law at the time it was taken, or was there some – and was there evidence that would lead them away from that interpretation? And on that understanding of what – that's the basis why when you're dealing with a case like this, the downside of saying we're going to ignore whether the actions taken were objectively reasonable, we're always going to allow subjective intent guarantees, again, as the Solicitor General said in Safeco. You're going to have to waive the attorney-client privilege on every single case. That seems to me not something Congress would have wanted to. We just have to put it in the context of the scheme, right? We're talking about a punitive scheme where the definition of usual and customary is completely unknowable, candidly, at least in the time that – during this litigation. There were no determinations as to what's usual and customary. And that notice requires scienter to be interpreted in an aggressive and protective way for the defendants in order to avoid what would otherwise be a due process problem. Mr. Phillips, can I read you two sentences from the Seventh Circuit's opinion, and can you tell me whether they are right or wrong? Ultimately, the crucial point is that the court, meaning the Supreme Court, has articulated a standard for acts committed knowingly or with restless disregard that excludes subjective intent. In the absence of textual indicia in the FCA supporting that subjective intent matters here, we apply Supreme Court precedent to interpret the same common law terms addressed in Safeco. In other words, we believe, says the Seventh Circuit, that based on Supreme Court precedent, subjective intent does not matter for the standard for acts committed knowingly or with reckless disregard. Do you agree with that statement? Yes, that's what Safeco says. All right, so if we disagree, if we think Safeco doesn't say that or Safeco doesn't apply here or subjective intent can matter with respect to actual knowledge in the FCA or the other definitions, what result? Do you lose? No, because it still seems to me that, I mean, you can take subjective, and you can take all of the employee e-mails into account. Those are non-privileged documents that are in the record. They were in front of the district court. And at the end of the day, the right answer to this case is that our clients followed an undeniably, objectively reasonable approach in what they did, that there was no guidance, that the federal government steadfastly refused to provide any guidance that would have assisted us in how to deal with this problem. And here we are, 15 years after the fact, and being exposed to trouble damages, to literally thousands of individual claims in circumstances where we had no notice that that could happen. So your standard is objective intent is the only thing that is relevant to the assessment of knowledge or recklessness. Yes. I think in deciding whether what we did was objective or not, whether we didn't believe it may say something about objectivity, but it's not an examination into their specific understanding. It has to be, unless you're going to make it open season on every federal government contractor. And those contractors have all told you the problem here. And the amicus briefs couldn't be clearer. Both the chamber and the Driven brief tell you, first of all, this is an enormously expensive enterprise, and that when entities acting in an objectively reasonable fashion and without the benefit of guidance from the government as to what is submitted. Objectively reasonable but subjectively unreasonable in the sense that they are making a statement that they know to be untrue, at least as alleged. You say that's irrelevant. Well, I mean, the problem with that is, I guess, maybe it's an epistemological issue, but I think the way the law normally, I mean, the way the common law normally has treated questions of law is that those are not things that aren't knowable. I think that was one of the questions that Justice Alito was alluding to, is that typically you don't know that. All you're doing is giving an opinion. No, I understand, but it's sort of like you're fighting the hypothetical. I just want to know the sentence that says, excluding subjective intent is what we have to do to evaluate knowledge. You say it doesn't matter. Subjective intent to evaluate actual knowledge for the purpose of the FCA. Right, because actual knowledge requires a determination. It has to be based on an objectively reasonable assessment and based on whether or not there's guidance that exists under those circumstances. Because if you don't take that position, if you go in the opposite direction, the downside is great because this is an extraordinarily punitive provision, and the court in SAFCO recognized as much, and I haven't heard the other side. My friend says that SAFCO is a more narrow position, but this court has pretty consistently held in dealing with the False Claims Act that it's not designed simply as a regulatory enforcement tool. That is exactly how it's being used here. But the statute says what it says, and don't you think it's a little odd to read a statute that reads like this, just to say that subjectivity doesn't matter? I mean, has actual knowledge, acts in deliberate ignorance, acts in reckless disregard. With respect to facts. That what you think isn't relevant? As to facts, obviously it is. As to the law... So are you just saying that this entire statute, we take it and throw it over our shoulder with respect to anything that has a legal judgment that's enmeshed in it? Not necessarily for anything that's got a legal judgment that's enmeshed in it, but with the theory of the case, is that you made a false statement because you said usual and customary is X, and it could have been determined to be Y, that that gives rise to a claim against us, a knowing claim. The allegation is that you knew it was X, and you said Y. That's the allegation. And as I understood what you just said, is that because there's a legal judgment subsumed in what you knew and what somebody later thought was objectively reasonable or not, that we shouldn't read this language in the same way we would ordinarily read this language, as being a measure of subjectivity. I mean, that is exactly the position the court took in Safeco. Well, Safeco was reckless in this case. And so I think, you know, there's an argument that, you know, recklessness looks at an object evidentially sometimes, but that's pretty hard to extend that to the mens rea we have here, knowing and in deliberate disregard. Well, I mean, you can say that it's a recklessness case, but, I mean, the statement of the court is, as a knowing or reckless violator, you would not normally think of them as a knowing or reckless violator. And I suppose I should clarify, Justice Kagan, I'm not saying that intent doesn't count ever in this litigation. If you get past the objective reasonableness, if it's not an objectively reasonable interpretation, and if there is authoritative guidance that pushes against that interpretation, then the Safeco defense is not available. And obviously subjective intent will count, and all of those statements that say we didn't really believe that will be the basis on which the hammer or the false claims act will come down on them. Our point is you shouldn't get to that stage if, indeed, all of the actions taken by the defendants were objectively reasonable at the time that they took them and there was nothing to lead them away. I think maybe HALO pushed Safeco from 51 to 49. And what is your distinction of HALO? I mean, the patent statute is fundamentally different, I think, from this, because the patent statute doesn't have a scienter requirement embedded in the text of the statute. Section 284 says you can trouble the district court candidates' discretion, trouble the damages essentially for any reason. That had been construed by the court to be narrower than that, but when the court said that you had to take into account or you couldn't rely solely on objective determinations, it was because there was embedded in the history of the patent law bad faith, and therefore an examination of bad faith was required as part of that, or you couldn't limit the district court's discretion in deciding how to enhance the damages by excluding the bad faith element. I mean, that makes HALO sound very patent specific, and maybe I'm wrong about this. There's definitely someone on this bench who knows better than I do what HALO meant in that footnote. But I would take that footnote to mean something like, we've read the Safeco footnote, and we kind of don't really understand it. And we're definitely going to say it depends on circumstances and consign it to its facts. Well, you're 100% right that there is someone in the courtroom who is in a better position to say exactly what that footnote meant. But I did argue the HALO case, so I have some recollections of the circumstances. And the facts there were quite extreme. They dealt with the precise problem of post-hack rationalization and was exclusively on that understanding. I distinguish Safeco by the fact that it dealt with a consumer protection statute that had no common law tradition. But the government's absolutely right that this statute is based on fraud, and fraud has always looked at subjective intent. So why read something out that the common law tradition never would have in this kind of statute? Because what the statute requires is knowingly, and then it has three definitions of knowingly, or actual knowledge, reckless disregard, and deliberate ignorance. Those all have common law meanings, and the understanding is that even fraud generally, or making false statements, has always treated legal issues, statements with regard to legal issues, differently than the factual. The problem is Escobar. Mixed legal questions with facts are a different thing altogether. Every time we try to tease out that issue, we fail. When it's not pure legal, when it's not pure fact, but it's mixed, that's a harder standard to define. So why don't we take it at its face value? Subjective knowledge is important. Because I don't believe Congress meant to permit every false claims act case in which there's a reasonable difference of opinion about the appropriate legal standard to inquire into the attorney-client privilege. I think the person most knowledgeable about that, what Congress intended, is probably Senator Grassley, because I suspect he's the one who initiated almost all these laws and follows them so closely, and he disagrees with them. Well, I would give Senator Grassley the respect that a single senator in the Senate deserves under these circumstances. The statute says what the statute says. It doesn't as we concede. You don't need proof of specific intent. There are certainly deviations from the common law. The common law historically treated the questions of interpreting the law differently than it treated questions of fact. We are here clearly on a question of the interpretation of the common law, and the only issue is, is it fair in these circumstances, years after the fact, to impose trouble damages liability, large civil penalties, in a case where we had no notice that this was a problem under these circumstances, and to do so on the basis of statements from employees trying to figure out what the law means. Mr. Stewart said the problem was you didn't show your work. Did you have the opportunity to show your work? Well, we were audited 12,000 times, which means that there were probably more than a few opportunities for somebody to ask us and, in fact, to show our work. And as the record clearly shows, the vast majority of the pharmacy benefit managers' view of the world was, these kinds of discounts don't count. We don't take them into account as part of the usual and customary price, and, therefore, it is at least passing strange to come in here now, 10, 15 years later, where the party on the other side, who had a financial interest candidly in taking the other position on that issue, pretty consistently and across the board said, no, that's fine, we understand that, discounts don't count. The General Accounting Office said the price, in setting the price, discounts don't count. CMS recognized, discounts don't count. You get all those statements from the federal government as to how you're supposed to proceed, and no state government's involved in this case who told us that Medicaid doesn't take into account, if you discount, you have to discount in full. I mean, that could have been a position. You know, if the federal government wants to take that position, there's a way to do it. It adopts a rule. It tells everybody what the standard is, and then you're on notice, and there's no question. If they had said that any discount then becomes the baseline for all, that's usual and customary, is any baseline on any drug under any circumstances, I mean, we might challenge that rule as being inconsistent with the concept of usual and customary or just an unreasonable interpretation of the law, but at least if we went forward after that and ignored it, we would have been put on notice. Our position would obviously not be, would either be viewed as objectively unreasonable or we had been given guidance that said to us, don't go in that direction. So in response specifically, Justice Alito, I think, you know, part of it, I mean, we clearly had the opportunity or there were opportunities for information to be exchanged. The government's view of the world is that we're supposed to come in and identify problems. And I go back to Dreeben's brief, which says you can try until the end of the day to get the federal government to clarify for you issues about which they have discretion, and they will as consistently decline to do that as is possible, allowing themselves a much broader opportunity for enforcement discretion. I mean, remember, this is a case where the government looked at this for five years, didn't intervene, seemed to be, you know, didn't take any actions with respect to any of this ever, and then it shows up here now and says the issue is whether or not, you know, how to take this into account and the court ought to review it under these circumstances. This is not just about this case. This is a problem that the False Claims Act is going to present to the entire business community in ways that I think are inappropriate. Thank you. Justice Thomas? Just so I understand you, Mr. Phillips, you're saying if there had been a rule, and I'm just giving an example, that the price is four and you charge five, that that would be a false? That would be a false claim, yes, Your Honor. But you're saying that no one gave you guidance on usual and customary and that you arrived at a price that was above your discount price and that that cannot be false? Right. And that that choice was under the circumstances objectively reasonable given the language of usual and customary in the way that it was generally interpreted by contracting parties on the other side and by state and federal agencies. Justice Alito? Justice Muir? Justice Kavanaugh? Just one question. I'm not saying this is going to happen, but if you lose this case, you've talked about the business community. It strikes me that it's a much narrower loss if it's the post hoc theory and like a fallout disaster. If it's the theory, the broader theory that even if you've considered it at the time and you guessed wrong legally, you can be held liable for the troubled damages. Do you agree with that? Do you understand what I'm referring to? Of course. Of course. I mean, look, if it is a full defense under, if you call it the Safeco defense unit, this is modified by Safeco that says that as long as the parties had a reasonable, took a position that was reasonable under the circumstances, you cannot come in and waive something after the fact and save you if you otherwise didn't have anything where your intent was up in the air. I mean, that would obviously be more important for the business community than they are less damaging to the business community than the alternative. Thank you. Justice Barrett? Justice Jackson? Thank you, counsel. Mr. Singh? There are three things that I'd like to just quickly discuss. The first is, as Mr. Phillips says, the statute says what it says, and it says something very different from the Fair Credit Reporting Act and very different from the Seventh Circuit's rendition of Safeco and the rule that it adopted. Terms like objectively reasonable authoritative guidance appear nowhere in the False Claims Act. It refers to clearly subjective terms, and so I think at a minimum the right holding in this case is to say you should apply the statute as written. It includes plainly subjective terms, and any rule that treats subjective understandings as irrelevant is plainly wrong. Going forward from there, there's this question that Mr. Phillips has introduced about, is there a real difference between law versus facts? And I think the answer is that sometimes there can be, but the beauty of the subjective rule is that it accounts for that. You can subjectively be more or less sure about facts. You can subjectively be more or less sure about law. All of that is true. There is no need to set an arbitrary threshold of if this particular kind of precedent was available, then you can know the law, but not otherwise. What the subjective rule asks is look at what people actually believed at the time they were filing claims. Did they believe they were doing the right thing or the wrong thing? And that could be because of a legal reason or a factual reason. It's one size fits all, and again, this is nice in light of the text, because the text does not distinguish between questions of law and fact. It has one standard for every reason why a claim might be false or fraudulent, and so you should apply the same inquiry whether it's false or fraudulent. In light of that, the other side's confession that the subjective standard applies to facts is, I think, quite a helpful one for us when it comes to figuring out what standard you should apply to law. You should do the same one because the statute only has one. Lastly, I just want to push a little bit on some of the descriptions that Mr. Phillips is offering of the record in this case. He says there's no guidance, there's nothing, but we have cited the contrary guidance, and we have moreover cited all of the internal communications showing that their employees understood that guidance. As Justice Gorsuch said, these are all lovely things that he should tell a jury about why they couldn't have had an idea at the time that what they were doing was wrong, but they are not a basis to hold as a matter of law that the defendant's subjective intent is always irrelevant if someone can identify an objectively reasonable interpretation. For those reasons, we would ask the Court to reverse the judgments below. Thank you, Counsel. Case is submitted.